### ROSSER J. WILLIS v. CONTINENTAL CASUALTY COMPANY.[1]

July 11, 1924.

No. 24,079.

**Verdict for plaintiff sustained by evidence.**

    Evidence considered and *held* sufficient to sustain a verdict in favor of the plaintiff.

[1]Reported in 199 N. W. 899.

Action in the district court for Ramsey county to recover $653.55. The case was tried before Sanborn, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $673.10. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Barrows & Metcalf*, for appellant.

*Kueffner & Marks*, for respondent.

QUINN, J.

In December, 1920, Doctor Earl performed an operation on the plaintiff. He testified that he found adhesions between the duodenum and the gall bladder; that there was no ulcer palpable in the duodenum nor in the stomach; that the appendix was kinked and clubbed; that there was a twist in the region of the appendix; and that he removed the appendix and the gall bladder.

In November, 1922, the plaintiff signed an application for a health policy in the defendant company. The policy provided that payment would be made only for "bodily sickness or disease which is contracted and begins during said time," that is, after the policy became effective. In his application the insured stated that "except as herein stated I have not had nor am I now suffering from * * * any chronic or periodic, mental or physical ailment or disease." The only exception to the above contained in the application was that he was ill with indigestion for three weeks in 1917, and that in 1920 and 1921 he was confined to his bed on account of an operation for appendicitis and gall bladder trouble.

Doctor Andres performed an operation on the plaintiff in April, 1923, for a duodenal ulcer. Doctor Welch was present at this operation. This action was brought to recover for the expense and the disability resulting from the operation. The amount of the verdict is not criticised. The appeal is from an order denying defendant's alternative motion for judgment or for a new trial. It is contended on behalf of the appellant that the respondent is not entitled to recover in this action; first, because it conclusively appears that the disease, for which recovery is sought, existed

and manifested itself before the issuance of the policy, and second, because respondent in his application made false statements which materially affected the acceptance of the risk and hazard assumed by the insurer.

Doctor Cavanaugh was called by the appellant as an expert witness. He testified that he had been in the general practice of medicine and surgery for about a quarter of a century; that during the course of his practice he had a good many occasions to observe and treat duodenal ulcers; that there are many things that go to make up the diagnosis of gastro-intestinal ulcers; that he had a conversation with the respondent in May, 1923, but made no physical examination of him; that he took down his statements from which he dictated a letter to the company in regard to the matter; that he has a carbon copy of the letter and also the original notes; that respondent gave him his history relating to his condition prior to December, 1920, as follows: That he had attacks of sour stomach, indigestion, cramps and boring sensations about once a month or once in three months; that their duration was from a few days to two or three weeks; that in December, 1920, he had an operation and his appendix and gall bladder were removed; that during the time of convalesence, he had none of these attacks; that after he was up and about, the attacks were the same as before his operation; that they were identical with those he suffered prior to December, 1920; that they were about the same in severity, frequency and duration. The doctor further testified that he then wrote the company, stating that the history pointed clearly to gastro-intestinal ulcers; that there was no doubt in his mind but that it was a case of gastro-intestinal disturbance extending back over a number of years; and that he had arrived at a diagnosis from the past history and from the record in the case. He also testified that it is generally admitted that diseases in the upper abdomen are very difficult of an accurate diagnosis, and that a great deal must be based upon preceding history.

Doctor Welch who was present at the operation on April 3, 1923, testified that the duodenum is the first section of the small bowel just outside the stomach; that an indurated nonobstructive duodenal

ulcer is a hardened area about the ulcer which does not obstruct the out-flow; that no one can tell how long the ulcer found in respondent may have existed there; that it might have been comparatively brief; that, judging from the conditions found at the time of the operation, it might have been of recent origin previous to the operation; that there might or might not have been prior symptoms manifested to the patient; that ulcers go on to perforation without producing a single symptom; that, if there were symptoms, there might have been a variety of them, such as nausea, pain, hemorrhage and loss of weight—all of these.

Doctor Earl testified that he saw the appellant with relation to his ailments for a couple of months prior to the operation in December, 1920; that there was a gradual improvement of the patient after the operation; and that it is uncertain as to the length of time an ulcer may exist in a human being before the patient has any knowledge of it, or has any symptoms.

The respondent testified that, after the operation in 1920, he was a sick man; that the symptoms which had existed prior to the operation persisted for perhaps a year, intermittently, namely, a gnawing or burning sensation in the stomach, occurring when the stomach was empty, principally in the middle of the night; that the attack would vary as to its duration from a week to three or four weeks, but gradually tapered off both as to intensity and frequency; that at times there was a burning sensation in the throat and acid in the stomach; that there was a gradual subsiding of these symptoms both in intensity and frequency, and then a final disappearance along in August or September, 1922; that he had the same symptoms for several years before the first operation; that he was never in better health than when the application was made; that he had gained in weight; that after the operation his health was good until March 15, 1923, when he was taken sick in the night and vomited food and blood; that he had never had an attack of that sort before and that he called a doctor and the operation followed.

We have recited the testimony at considerable length to indicate its nature and general trend, as bearing upon the question whether

reasonable minds might differ in determining from the entire record whether the disease for which the last operation was performed, existed and manifested itself at or prior to the date of the application for the policy, and as to whether the insured made false statements which materially affected the acceptance of the risk by the insurer. We are of the opinion and *hold* that the proofs, when considered all together, made a case for the jury upon both questions and that the verdict should stand.

Affirmed.